UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAROLYN WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-cv-01036-DML-LJM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Order on Judicial Review

Plaintiff Carolyn Williams applied in January 2013 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that she has been disabled since May 15, 2012. Acting for the Commissioner of the Social Security Administration following a hearing on January 28, 2014, administrative law judge James R. Norris issued a decision on February 26, 2014, that Ms. Williams is not disabled. The Appeals Council denied review of the ALJ's decision on May 16, 2014, rendering the ALJ's decision for the Commissioner final. Ms. Williams timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Williams contends the ALJ erred in a wide variety of ways. As a threshold matter, she argues that remand is required because she did not validly waive her right to counsel at the administrative hearing and she was prejudiced by the ALJ's failure adequately to develop the record. Even if the court were to find the record adequately developed, she argues the ALJ erred by (a) failing properly to

evaluate her physical impairments against the Listing of Impairments, (b) failing properly to assess her credibility, and (c) failing to evaluate the demands of her past relevant work and its consistency with accommodations required by her physical and mental impairments.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Williams's specific assertions of error.

### Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits). Ms. Williams is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not

disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her

vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Applicable Standard of Review

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

**I. Ms. Williams did not validly waive her right to counsel, and remand is required in this case.**

  **A. A claimant has a right to counsel at the administrative hearing.**

Ms. Williams appeared without counsel at her January 28, 2014 administrative hearing. The ALJ stated at the outset that her case file showed that

her attorney recently had withdrawn from representation. He then asked Ms. Williams if she wanted to "go ahead and proceed" without counsel. She said yes, and the hearing proceeded. (R. 33).

As the Commissioner concedes, the ALJ failed to ensure Ms. Williams validly waived her right to have counsel at the hearing, as required under Seventh Circuit precedent. Long ago, the Seventh Circuit established a protocol an ALJ must follow to ensure a claimant makes an *informed* choice to waive a right to counsel at the hearing:

> [W]e require the ALJ to explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fee.

*Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir. 1994) (citing *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991)). *See also Skinner v. Astrue,* 478 F.3d 836, 841-42 (7th Cir. 2007) (reaffirming the protocol established in *Binion* and *Thompson*). That protocol was not followed here.

### B. Where waiver of counsel is invalid, the ALJ has a heightened duty to develop the record.

An invalid waiver does not require remand, but it shifts to the ALJ a heightened duty to ensure the administrative record is fully developed, and shifts to the Commissioner the burden on appeal to prove that it was. The Seventh Circuit described these consequences in *Skinner*:

> The ALJ's failure to obtain a valid waiver of counsel heightens his duty to develop the record. When an ALJ fails to adequately inform an unrepresented claimant of the right to counsel, the ALJ must

> 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.' If the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record. While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant.

478 F.3d at 841-42 (internal citations omitted). If the Commissioner meets her burden, the claimant may rebut by "demonstrating prejudice or an evidentiary gap" or by showing the "ALJ failed to elicit all of the relevant information from the claimant." *Binion,* 13 F.3d at 245.

### C. Ms. Williams has shown prejudice stemming from the ALJ's failure to adequately assess her cancer impairment at step three.

Ms. Williams asserts there are three main gaps in the ALJ's development of an adequate record on which he based his decision she was not disabled. The first concerns her cancer, the second concerns her asthma treatment, and the third concerns the duties of her past work in customer service. The court determines Ms. Williams was prejudiced by the ALJ's failure to obtain adequate medical opinion on whether her cancer met or medically equaled a listing, and by the serious factual errors on which the step three decision was based. Because these errors alone require remand, the court does not resolve Ms. Williams's other arguments about evidentiary gaps in the record. As provided in section II below, these and other issues raised by Ms. Williams may be reconsidered by the ALJ on remand.

#### 1. The ALJ's step three conclusion regarding Ms. Williams's cancer is wholly unsupported by the record.

The ALJ evaluated Ms. Williams's history of breast cancer under listing 13.10, which Ms. Williams concedes is the applicable listing. He recorded the

6

requirements of that listing, and stated the "record does not show" any of the requirements. The portion of his decision devoted specifically to step three reads:

> Also considered was the claimant's history of breast cancer under Listing 13.10. However, the record does not show either: A) Locally advanced carcinoma (inflammatory carcinoma, tumor of any size with direct extension to the chest wall or skin, tumor of any size with metastases to the ipsilateral internal mammary nodes; B) Carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases; or C) Recurrent carcinoma, except local recurrence that remits with antineoplastic therapy.

(R. 17). The ALJ provided some insight regarding his evaluation of the medical evidence of Ms. Williams's cancer later in his decision when addressing Ms. Williams's RFC. He acknowledged that Ms. Williams has a "history of recurrent breast carcinoma," and although he cited relevant information documenting that history (a November 19, 2012 PET scan, R. 209-211, and a surgical pathology document dated January 14, 2013, R. 212-13), the only evidentiary support for a conclusion that the history insufficiently met or medically equaled one of the subsections of listing 13.10 is a statement by the medical expert (Dr. Pella) at the hearing that none of Ms. Williams's severe impairments meets or medically equals a listing. (R. 35-36). The ALJ's decision makes clear he relied on Dr. Pella in reaching his conclusion. (R. 21-22: "The decision has specifically evaluated the opinion evidence, including the opinions by . . . medical experts [which are] given great weight because they had the opportunity to review the medical record in its entirety and offered thorough and well supported medical analysis with specific

7

reference to the medical records.") The Commissioner concedes that Dr. Pella's opinion is the evidence supporting the ALJ's step three decision. (Dkt. 22 at p. 17).

### 2.  Dr. Pella's opinion is based on gross factual errors.

The testimony of Dr. Pella, who is board certified in internal medicine and pulmonary disease (R. 33), reveals he had not fully accounted for Ms. Williams's breast cancer, and got his facts wrong—grossly wrong.

Dr. Pella testified that Ms. Williams underwent a right lumpectomy in 2000 because of breast cancer, but "she was not offered radiation therapy or chemotherapy, and there was no evidence of recurrence with that particular tumor." (R. 34). He then said she had a lump in her left breast in early 2013 and underwent a biopsy, but the actual biopsy report did not show malignancy. (*Id.*) When Ms. Williams (not represented by counsel) was asked whether she had any questions for Dr. Pella, she told Dr. Pella that she had had two bouts of cancer on the right side and a breast reduction on the left side, and she had been told that her cancer was of a type for which there was an increased risk for recurrence. (R. 37-38). The ALJ interjected that Dr. Pella was discussing only the medical evidence as it exists now and not what might happen in the future. (R. 38). The ALJ then confirmed *twice* with Dr. Pella that there was nothing in the record to show the recurrence of cancer:

> ALJ: [I]n terms of what's shown in the record, there was nothing to show that [breast cancer] had recurred, is that correct?
>
> Dr. Pella: That's right. She had a PET scan, which was negative for evidence of recurrence.

* * * * * *

>ALJ: But the record, but the record in general does not show that the cancer has progressed or has come back, is that – that's what I understand?
>
>Dr. Pella Not in the record I have available, Your Honor.

(R. 38-39).

The record unequivocally shows, however, that Ms. Williams *had* suffered a recurrence of cancer. It also shows, unequivocally, that Ms. Williams's right side lumpectomy in 2000 was treated with radiation. The medical records are directly contrary to Dr. Pella's recitation of the underlying factual support for his opinion.

Ms. Williams had a right lumpectomy in November 2000 because of cancer. (R. 209, 220, 223). "This was followed by radiation therapy to the ipsilateral breast," but the patient refused to undergo chemotherapy even though chemotherapy was also offered. (R. 220). In November 2012, Ms. Williams saw her physician because she felt a lump in her left breast. She had a mammogram, which showed a mass in the right breast but no evidence of malignancy in the left breast. (R. 220). She had a biopsy of the mass in the right breast and "[i]t came back as invasive ductal carcinoma, grade III, triple negative tumor." (R. 220). A PET scan was then performed, also in November 2012, and although there was no evidence of "moderately or intensely . . .distant" metastatic disease (meaning the cancer had not spread to other distant parts of the body), it was unknown whether the recurrent cancer in the right breast was also in the axillary [underarm area] lymph nodes. (R. 210).

Based on the discovery in November 2012 of cancer in the right breast (as shown by the biopsy), Ms. Williams underwent surgery in January 2013. She had

9

(1) a partial mastectomy on the right side, (2) a biopsy of lymph nodes, and (3) a reduction of the left breast for balancing. (R. 212-13, 223-24). The operation confirmed that Ms. Williams had "right recurrent breast cancer," which is why she had a partial mastectomy. (R. 212). Fortunately for Ms. Williams, the lymph nodes did not evidence malignancy and neither did her left breast, and the doctors believed the partial mastectomy on the right breast had removed the cancer discovered in 2012 ("no evidence of residual malignancy"). (*Id.*).

In the face of these medical records, it is quite disturbing that Dr. Pella told the ALJ the 2000 right-sided cancer for which a lumpectomy was performed was a "limited disease" because she was not even offered radiation therapy or chemotherapy and there was no evidence of recurrence (R. 34). The court has no idea how he could have missed the numerous references to Ms. Williams's 2000 right-sided cancer having been treated with radiation therapy (and the notation that chemotherapy was offered but Ms. Williams declined), and the documentation that Ms. Williams had recurrent cancer in the right breast discovered in 2012, for which she underwent a right-sided mastectomy in 2013. It is also indefensible for the ALJ to have relied on Dr. Pella's opinion when the ALJ apparently looked at the very medical records (he cited some of them) that prove Dr. Pella's "facts" were grossly wrong.

Because Dr. Pella's opinion was the medical support for the ALJ's decision that Ms. Williams's cancer did not meet or medically equal listing 13.10 and that opinion has no worth on that issue, the court concludes the ALJ failed adequately to

develop medical support for his decision Ms. Williams was not presumptively disabled at step three because of her cancer. The court also concludes, for the same reasons, that the ALJ's step three decision is not supported by substantial evidence. Remand is required. The ALJ should consider seeking the expertise of an oncologist to assist him in determining whether listing 13.10 is met or medically equaled.

## II.     Other Issues on Remand

The court need not resolve Ms. Williams's other assertions of error. The court notes, however, that she has raised significant issues about (a) the ALJ's failure to specifically address her testimony (and that of her husband and daughter) about the frequency of Ms. Williams's use of a nebulizer machine to treat her asthma condition and its potential interference with work activities, (b) the paucity of information about Ms. Williams's past relevant work in customer service and its similarity (or difference) from the clerk typist job identified by the vocational expert, (c) the lack of information about the ways in which Ms. Williams's mental impairments may affect her work abilities, even if they are non-severe, and (d) the slim support for the ALJ's credibility determination. All of these matters—which are relevant to an RFC determination and to steps four and five of the sequential analysis—may be addressed on remand, to the extent Ms. Williams is not found presumptively disabled at step three.

If a new hearing is convened, the ALJ must ensure Ms. Williams is either represented by counsel or makes an *informed* choice to proceed without counsel.

11

## **Conclusion**

For the foregoing reasons, the Commissioner's decision that Ms. Williams is not disabled is REVERSED AND REMANDED, under sentence four of 42 U.S.C. § 405(g).

So ORDERED.

Dated: September 1, 2015

                                      Debra McVicker Lynch
                                      United States Magistrate Judge
                                      Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

`